Hershfang, J.
Plaintiffs returned to Boston from Florida on their first commercial airline flight but claim their luggage didn’t. In Count 1 of their complaint, plaintiffs allege that defendant, Delta Air Lines, Inc. (Delta) owes them $2,479 for that loss, because of Delta’s breach of its contractual responsibility to them. In Count II of their complaint, plaintiffs claim that Delta further violated their rights under G. L. c. 93A, the consumer protection law, in how Delta responded or failed to act with respect to their filing claims following the loss. In that count, plaintiffs seek treble damages plus attorneys fees. Judgment was entered for plaintiffs in the sum of $1,500 on the contract claim (Count I). Plaintiffs were also awarded $1,500 as damages and $1,305 in attorneys fees under Count II. Delta, asserting error in the trial judge’s failure to allow certain of its requested rulings, brings the matter here. We affirm the judgment on the contract claim and modify the judgment on the 93A claim.
We summarize the evidence and the trial court’s rulings from the report of this matter and the court’s separate findings of fact.
The Antonellis, plaintiffs here, had journeyed to the Fort Lauderdale, Florida area via People’s Express, apparently in an unremarkable way. It was , their first commercial flight. The plaintiffs were faced wtih having to meet a *76 scheduled February 3, 1983, 3:00 a.m. departure time for their return via People’s Express. Ed Butler, an acquaintance from Boston that the plaintiffs met in Florida, talked them into changing to a 12:15 p.m. Delta Flight #1018 that same day. The Delta flight was $99 per passenger, $30 per passenger more than People’s Express. The Antonellis and Mr. Butler appeared at what Mr. Antonelli believed was a Delta Airlines ticket office in a shopping mall in the Fort Lauderdale area. Mr. Antonelli gave Mr. Butler $200 in cash to buy the tickets while Mr. Antonelli went to telephone People’s Express and cancel the return reservations. Mr. Butler returned with two tickets contained in ticket envelopes. Neither plaintiff examined the tickets except to see that they called for a flight from Fort Lauderdale to Boston. On the February 3, 1983 departure date Mr. Butler drove plaintiffs to the airport where they checked three suitcases at curbside and received three Delta claim checks. Those claim checks contained a notation which purported to invoke “Tariff Regulations limiting [Delta’s] liabilityfor checked property to an amount not exceeding $750. for each domestic passenger.” Mr. Antonelli did not read this notice. At the boarding gate plaintiffs retained a portion of their boarding pass. Fortuitously, on their Delta flight back, plaintiffs ran into an Alice Brooks who had been acquainted with plaintiffs. Following their landing in Boston, Ms. Brooks saw plaintiffs at the Delta baggage claim area where she picked up her baggage and left the Antonellis waiting for theirs. Unfortunately for all concerned in this matter, plaintiffs’ luggage has never been returned to them.
What happened to the Antonellis’ passenger ticket stubs was a matter in dispute. Mr. Antonelli testified that he gave the stubs and the baggage checks to the Delta agent in Boston, a Mary Davidson, and received in return a blue card with the claim checks stapled to it. Mrs. Davidson acknowledged that the signature on the blue receipt card was hers, did not remember the Antonellis specifically, but pointed out that with respect to the plaintiffs’ ticket numbers she had written on that receipt card form the word “unavail”, indicating to her that at the time she made the report plaintiffs did not have their ticket stubs. She further testified that customary practice required that she insert on the receipt the ticket number entries and that she return the ticket stubs to the passenger. Accordingly, Mrs. Davidson concluded that she had not received plaintiffs’ ticket stubs or she would have entered the ticket numbers on the receipt.
Written, sworn and notarized claims for the property loss were filed by plaintiffs on February 18,1983. Mr. Antonelli claimed a loss of 11 categories of items, only one of which exceeded $150 in total value, namely, a Yashica camera with winder, flash and a telephoto lens. The camera was used by Mr. Antonelli in his work as a free lance photographer. He valued it at $700. His total claim was $1,539. Mrs. Antonelli claimed a loss total of $940. Her claim listed nine separate categories of items. One of them, a 100% silk dress, she valued at $425. None of the others exceeded a $150 claim value. The sum of both plaintiffs’ claims thus was $2,479, which comprised the Count I total.
Plaintiff and Delta exchanged communications, first in March, 1983, and again in May, 1983. In them plaintiffs claimed they gave Delta whatever they had and that data showing their acquisition of the items claimed was lacking. Delta, in turn, claimed that plaintiffs had failed to provide ticket information, had apparently inaccurately represented their place of employment and place of residence on their claim forms, that Delta’s liability was limited to actual value and that “proof of amounts claimed exceeding $150 was necessary.” In early December, 1983, Delta received a demand letter from *77 plaintiffs’ counsel pursuant to G. L. c. 93A. In substance, that letter claimed that Delta’s view was unreasonable because plaintiffs’ ticket stubs had been kept by Delta’s Mrs. Davidson at the time the loss was reported, Delta’s demand for receipts for articles lost was unreasonable because receipts for articles purchased in Florida were lost with the luggage, and Delta’s request for the receipt of the other items was unreasonable because “most people do not save receipts of items ordinarily taken on vacation.” The letter also noted that while the claim of loss of plaintiffs’ luggage was for the total amount of $2,479, plaintiffs would accept the limitation of liability of $750 per passenger, or a total of $1,500. Delta responded to that claim letter by restating the position Delta had taken in its letters of March and May, and noting that Delta had not received any additional evidence warranting any change of its position. It reiterated Delta’s request for documentation supporting the value of Mrs. Antonelli’s dress at $425, Mr. Antonelli’s camera and equipment valued at $700, and his sportjacket, which he had valued at $150. Delta said it would give further consideration to the claim if these requested data were submitted.
At the time of trial, both plaintiffs identified a woman in the courtroom as the Mrs. Davidson in question. In fact, as it appeared, they had identified a Helen Frazier, another Delta employee. Mrs. Frazier was wearing a Delta uniform; Mrs. Davidson, who was also in the courtroom at the time, was not.
Prior to final argument, defendant made 10 requests for rulings, all of which the trial court allowed save for requests numbered 4,8,9 and 10. With respect to each of those four disallowed requests, the court noted “lacks specificity denied.” In addition, following its denial of requests numbered 8,9 and 10, the trial judge added: “See Rules of Civil Procedure 64(b).” Following his denial of the 10th request, the trial judge further added “Also court’s findings of fact.”
The aforesaid four requests were as follows:
“4. Upon all the evidence, a finding for the plaintiffs is not warranted because the plaintiffs have failed to establish by a fair preponderance of the credible evidence that either one of them was a fare paying passenger.
“8. Upon all the evidence, a finding for the plaintiffs on Count II is not warranted because there is insufficient evidence to establish that a violation of MGL c. 93A, section 2 occurred.
“9. Upon all the evidence, a finding for the plaintiffs on Count II is limited to damages in the amount of $25.00 because there is insufficient evidence to establish any greater actual damages caused by any violation of MGL c. 93A section 2.
“10. Upon all the evidence, a finding for the plaintiff for multiple damages is not warranted because there is insufficient evidence that the defendant violated MGL c. 93A section 2 willfully or that its failure to grant relief was in bad faith with knowledge or reason to know that the practice complained of violated MGL c. 93A section 2.”
In addition to his response to Delta’s rulings requests, the trial judge made express findings. He found that the plaintiffs had lawfully boarded the Delta flight #1018 from Fort Lauderdale, Florida to Boston; had checked their three pieces of luggage with a Delta agent for transport on the same flight and on their arrival in Boston the luggage was missing and has not since been returned. Plaintiffs were also expressly found to have turned over all of the information available to them in order for Delta to trace their lost luggage and that the loss was Delta’s fault. With respect to the 93A claim the trial judge *78 found that Delta’s course of conduct constituted a wilful, unfair, deceptive and unreasonable practice. He entered the judgment noted earlier. Delta, claiming to be aggrieved by the rulings on the four noted requests, reported the same here for determination.
The first question we face is whether Delta via its requests numbered 4,8,9 and 10 has properly brought this matter here.
Mass. R. Civ. P. Rule 64(b), cited by the trial judge, states:
Requests for rulings shall be in writing and be presented to the court before the beginning of any closing arguments unless special leave is given to present requests later. Whenever any request or rulings, founded upon evidence, shall be refused upon the ground that it is inconsistent with or inapplicable to the facts found, or because the facts cited in the'request are not found, the court shall state the facts found, or the facts recited which it does not find, upon which such refusal is based, unless the same appear in special findings filed. No review as of right shall lie to the refusal of a request for a ruling ‘upon all the evidence’ in a case admitting specification of the grounds upon which said request is based unless such grounds are specified in the request,- and then only upon the grounds so specified. Decisions of the trial justice as to all requests for rulings duly filed shall be in writing and shall be included in the report as allowed or established, [emphasis added].
The emphasized portion of the rule makes explicit that a denial of a request for a ruling “on all the evidence,” because the requested ruling lacks specificity is justifiable only when the request “admit [s] specification of the grounds.” As we see it, in making that judgment a fair balance must be struck. See, Holton v. American Pastry Products Corp., 274 Mass. 268, 270-271 (1931). Certainly, neither the court nor the party not making the request should be left to guess at the rule of law the requesting party seeks to invoke, or its applicability to the facts of the case. See Castano v. Leone, 278 Mass. 429, 431 (1932). (The purpose of the rule is to “disclose definite and unambiguous propositions of law as applied to the evidence.”) On the other hand, that rule, which verbatim has continued in effect for at least the past 54 years2 must be interpreted with an eye to the realities of the situation in which it is to apply. For example, the usual amount in controversy in civil actions in the Municipal/District Courts places significant constraints on the time and cost the parties have available realistically to invest in pre-trial discovery. The parties thus lack a precise idea in advance of the trial of the detailed content of the opposing party’s contention. Yet, the need to have written requests filed before argument absent a showing of special need, Mass. R. Civ. P., Rule 64(b), makes sensible if not essential that requests for rulings be prepared at the office of the respective counsel prior to the court hearing. Moreover, the requests for rulings are the exclusive vehicle of preserving a party’s right to a review of the Municipal/District court judgment, and absent any written or taped record or transcript of proceedings in the Boston Municipal Court Department, the importance of having requests framed in a way that preserves the rights of appeal is underscored. In any event, the request for ruling method is not designed as a trap for the unwary, and a ruling on a request “on all the evidence” cannot be denied because the party seeking it has not exhausted every possible way of expressing the request with specificity. For cases 1 *79 interpreting and applying the rule earlier in its history see Forbes v. Gordon & Gerber, Inc., 298 Mass. 91, 95 (1937).
Where does this lead us?
We turn to the Delta requests the trial judge denied.
The denied 4th request seeks a judgment that the evidence does not warrant a finding for plaintiffs because of their failure to have established that either of them was a fare-paying passenger. In fact, the trial judge expressly found the opposite — that “ [t]he plaintiffs lawfully boarded flight number 1018 of the defendant, Delta Airlines, Inc. at Fort Lauderdale, Florida, destined for Boston, Massachusetts.” That finding is more than amply supported by the reported evidence. Suffice it for our purposes here to note Mr. Antonelli’s testimony that he gave Mr. Butler $200 cash for the Delta tickets, and that he and Mrs. Antonelli then gained access to the Delta flight in question where they were seen by a fellow passenger. Delta must thus have been satisfied that plaintiffs belonged when they were permitted to board that Delta flight. Indeed, Delta concedes that the Antonellis had Delta claim checks for their missing luggage. The Antonellis therefore likely further satisfied Delta’s agents their luggage belonged on that flight. Moreover, Delta’s fall-back position with respect to plaintiffs’ claims has been that those claims are limited to $750 per passenger as a “condition of contract” as set forth on each of its tickets issued during the time in question. Not unfairly under the circumstances, that is exactly how the trial judge in fact treated them in his ruling. The first part of Mass. R. Civ. P., Rule 64(b) quoted earlier allows a request for a ruling on the evidence to be denied if inconsistent or inapplicable to the facts actually found as was the case here. There was no error on this request.
The same result applies to Delta’s requested rulings No. 8 and No. 10 which seek declarations that there was insufficient evidence to establish a c. 93A, § 2 violation. Again, the trial judge expressly found to the contrary — that Delta’s “course of conduct constituted a willful, unfair, deceptive and unreasonable practice in violation of’that statute, a finding that again is amply supported in the reported evidence. Focusing on how Delta responded to the 93A claim should suffice. Although 11 months had passed since the loss, Delta was still unrelenting, insisting as its letter of December 13,1983 notes, that it would not change its view until plaintiffs’ documented, among other things, the value of Mrs. Antonelli’s dress which she claimed was $425, and Mr. Antonelli’s camera equipment and sport jacket. Yet, even if Mrs. Antonelli’s dress were in fact valued at $150 (and even assuming a zero value to her loss of souveniers, shorts, tee-shirts, etc., which she noted in her claim but which she did not value) the total of her claim would still have exceeded the $750 maximum. Similarly, Mr. Antonelli’s claim would have been $839, well in excess of the $750 maximum even had his camera and equipment been worthless. Furthermore, Delta even in December, 1983 also insisted on documentation to support the value of Mr. Antonelli’s sport coat although he listed it at $150 and Delta’s “policy was to require proof of amounts claimed exceeding $150” (emphasis added). Had the sport coat been worth but $65 the total still would have exceeded the $750 maximum. Such oppressive or unconscionable tactics justify invoking c. 93A. Cf. Commonwealth v. DeCotis, 366 Mass. 234, 242 (1974); Spence v. Boston Edison Co., 390 Mass. 604, 615-616 (1983).
Request No. 9 is different. In it, Delta seeks a declaration that “upon .all the evidence” a finding of damages on the c. 93A count in excess of $25 cannot be supported. Delta is essentially claiming that even if we view all the evidence most favorably to plaintiffs, the cited law does not allow a recovery of more *80 than $26.00. For the reasons noted earlier, a request of this type “on all the evidence”, akin to a demurrer, if it otherwise warrants allowance, is perhaps the best example of a request that may not be denied for lack of specificity. “. . . [T]he correct practice, in the district courts and in the superior court without jury is to raise the question of law whether the evidence is sufficient to warrant a finding for the plaintiff, by a request for a ruling that the evidence would or would not warrant Such a finding.” Forbes v. Gordon & Gerber, Inc., 298 Mass., 91, 94-95 (1937). Delta’s request #9 did that. To determine whether the request accurately set forth the law we turn to the relevant law.
G.L. c. 93A, § (a) says that:
“Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.”
G.L. c. 93A, § (3) provides:
“. . . [I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or $25 whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a wilful or knowing violation of said § 2, or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated § 2”
It should be recalled that the trial judge expressly found that plaintiff sent defendant a satisfactory 93A demand letter and that defendant’s response contained no tender or offer to settle the dispute. Thus, the trial judge found not only that defendant violated the aforesaid section 2 but that the course of defendant’s conduct also constituted a wilful, deceptive, unfair, and unreasonable practice.[3] The question then is whether having established liability under c. 93A, § 2, plaintiffs under § 3 must further establish their damages due to the unfair act or practice. Put differently, is it enough to show that plaintiffs are entitled to the value of their lost luggage, namely the $1,500 awarded them under Count I of their complaint, and to assess 93A damages as a multiple thereof, as the judge did here[4] or must plaintiffs’ loss for the delay by Delta in resolving the dispute also be established? The law calls for the latter. See Demarzo v. American Mutual Ins. Co., 389 Mass. 85, 101-102 (1983).
Cases decided since the trial of this case confirm that holding. Shapiro v. Public Service Mutual Ins. Co., 19 Mass. App. Ct. 648, 657 (1984) and Trempe v. Aetna Casualty and Surety Co., 20 Mass. App. Ct. 448, (1985). Trempe is particularly apt and appears dispositive. There, as here, plaintiff failed to show the amount of actual damages caused by the defendant’s unfair acts.[5] The trial court in Trempe had found defendant Aetna to have failed to be responsive and cooperative in dealing with plaintiffs fire damage claim, and that the *81 Aetna’s response constituted bad faith action in violation of C.93A. The judge therefore ruled that $20,947 policy recovery on a contract count should he doubled. On appeal, however, the court pointed out that the amount of the damage award was based on the fire loss and not on defendant’s alleged unfair settlement actions. (20 Mass. App. Ct. at 458). Because the plaintiffs in Trempe failed to prove any damages caused by the defendant’s unfair act in that case, the court held that the 93A recovery could not stand. Our case is analogous. Defendant Delta’s unfair acts, punishable under c. 93A, were its negative claim settlement practices not its failure to locate the plaintiffs luggage. In the absence of any proof of loss attributable to the 93A claim, the trial judge hére awarded 93A damages based upon Delta’s contract obligation to reimburse for lost luggage, just as the Trempe trial court had awarded 93A damages based on that defendant’s obligation to reimburse for fire damage. As in Trempe, plaintiffs’ award here cannot stand.'[6]
A plaintiff who successfully proves a 93A violation even absent a showing of actual loss is entitled to an award of the $25.00 statutory minimum. Leardi v. Brown, 394 Mass. 151 (1985). Each of the Antonellis is thus entitled to this $25.00 statutory amount, and no multiple thereof. Leardi, id. See also McGrath v. Mishara, 386 Mass. 74, 87 (1982).
There was no contention that the award of counsel feels was in any respect incorrect.
The lower court’s finding of $1,500 damages on Count I is to stand, as is the award of $1,300.05 in attorney’s fees on Count II. However the amount of damages found on the Delta violation of Count II is to be $25.00 for each plaintiff, or a total on Count II pf $1,350.05. Costs and interest are to be added.
So ordered.

 See Rule 27 of the Municipal Court of the City of Boston (1932). See, also, Rule 27 of the District Courts (1940).

 In the face of the apparent fact that both plaintiffs were passengers on the Delta flight in question and had received Delta claim checks for their luggage, we are left to surmise that Delta’s real complaint here, one the trial judge did not accept, may be that plaintiffs wrongfully acquired Delta tickets intended for others via a private, unauthorized transfer. That’s how plaintiffs gained access to the flight and Delta Luggage claim checks, the argument continues. And that’s why plaintiffs could not produce plane ticket stubs in their names or even a receipt of payment for the Delta tickets. If this is in fact Delta’s claim, or even if surmise, Delta, in the course of trial and in its brief has failed to express it or to produce any evidence in support, e.g. the flight manifest listing the names of the passengers, or why the manifest was unavailable. Moreover, for 93A purposes Delta never told plaintiffs or their counsel of this view but adopted the complained of actions described earlier.

 Plaintiffs here concede in their brief that other than the value of the contents of their luggage, they neither alleged nor proved any separate damage.

 Presumably plaintiffs lost the investment value of the sum due under Count I from the time Delta should have paid it to them. However, plaintiffs are not entitled to that loss since they offered no evidence concerning it. Shapiro, id.

 Plaintiffs’ brief argues that a 1979 amendment of G.L.c. 93A, § 9, now affords a remedy to any person “injured by another’s unfair or deceptive act or practice,” thus creating a different version of the 93A claim, and that a plaintiff is not currently required to prove a “loss of money or property.” While Trempe was analyzed and decided according to the pre-amendment requirement of proof of a loss of money or property, footnote 6 in Trempe (20 Mass. App. Ct. at 457) makes clear that damages still must be established in order to avoid the $25 minimum.