WILLIAM V. WALLACE *vs.* AMERICAN MANUFACTURERS MUTUAL IN-SURANCE COMPANY. June 18, 1986. *Consumer Protection Act,* Insurance claim, Unfair act or practice. *Insurer,* Unfair act or practice.

This action, filed July 9, 1984, sought recovery under G. L. c. 93A, § 9, and c. 176D, § 3(9) (*e*), (*f*), and (*n*), for failure of the insurance company (American) to settle a theft claim (and a related claim) under a policy (covering the period April 15, 1983, to April 15, 1984) issued by it. A Superior Court judge made the following findings.

---

On November 30, 1983, Wallace's vehicle was stolen from a shopping mall in Brockton. It never was recovered. The loss was reported promptly to the police and a claim was filed with American. American "was reluctant to make payment immediately because of a statistical suspicion of parties involved in the automobile business . . . in which . . . [Wallace] had experience." American did not deny the claim for three and a half months after the claim was filed and then did not suggest what (if any) "material misrepresentations" about the loss had been made.

American, so the judge found, "had ample opportunity to pay this loss but persisted in [its] denial." The judge recognized that American had "every right to be suspicious" but decided that "it never reached the point where its questions were any more than suspicions."

He concluded that American, by failing to comply with G. L. c. 176D, § 3(9) (e), (f), and (n), had violated c. 93A, § 9. He treated as damages the value ($4,500) of the motor vehicle (stated in the policy) plus the actual cost of the rental of a substitute vehicle amounting to $1,284.92. He doubled Wallace's claim as thus determined and judgment was entered on June 5, 1985, for $11,569.88.

Later, on August 30, 1985, on motions of Wallace and American, the judgment was amended (a) to allow attorneys' fees of $4,746.73, and (b) to reduce the allowance for rental of a substitute vehicle to the maximum amount of coverage for that item set out in the policy, viz., $450. The judgment thus was for the actual cash value of the vehicle ($4,500) plus $450 for rental of a substitute vehicle, a total of $4,950 (which when doubled came to $9,900) plus attorneys' fees of $4,746.73.

American appealed the award of $9,900 but did not appeal from the award of attorneys' fees. No appeal was claimed by Wallace. American's appeal argues that it was error to include in the basis of multiple damages the aggregate amount ($4,950) payable to Wallace within his policy's limits. American does not dispute "that Wallace is entitled [under c. 93A] to a sum for double damages, if he can show that he [has] been injured by American's failure to settle."

We think (1) that the amounts (within the policy limits as damages caused by the theft) cannot be the basis for an award of multiple damages under c. 93A, § 9, as amended through St. 1979, c. 406, and (2) that for recovery under § 9 there must be proof that the failure to settle caused actual separate injury to Wallace.[1] The case is governed by principles discussed in *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648, 657 (1985). That case held that Shapiro "had to show a *causal connection* beween . . . [the insurer's] failure to settle and *the loss of money or property* and that such loss was foreseeable as a *result* of the failure to settle" (emphasis supplied). The *Shapiro* case, to be sure, was decided under c. 93A, § 11, which still (see § 11, as amended through St. 1985, c. 278)

---

[1] The evidence before the judge is not included in the record appendix.

contains language similar to that which was set out in § 9, as it read prior to its amendment by St. 1979, c. 406, § 1. As a consequence, we regard the *Shapiro* case, although decided under § 11, as equally applicable to situations arising under § 9 before the 1979 statute became applicable.

The requirement of the "causal connection" mentioned in the quotation from the *Shapiro* case was not changed, we think, by the 1979 amendment of § 9. That 1979 amendment struck from § 9(1) the words "suffers any loss of money or property" and in effect replaced them by the words "who has been injured." A plaintiff still must show a *causal connection* between the insurer's *failure to settle* (amounting to an unfair act by American under relevant provisions of G. L. c. 93A and c. 176D) and the *injury* and loss for which recovery is sought.

*Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 457 (1985), was decided under c. 93A, § 9, on facts arising before the 1979 amendment became applicable. There it was said: "[T]he Trempes were entitled to recover $20,947 under the [fire insurance] policy. . . . Because Aetna's violation of . . . § 9, was found to be 'wilful and knowing,' the judge doubled the award . . . . [U]nder § 9(1), as amended by St. 1971, c. 241, i.e., as in effect on the date 'when the incidents underlying the complaint occurred,' . . . the Trempes were required to plead and show a loss of money or property as a result of the unfair and deceptive act. *The damages here awarded are based on the fire and not on the unfair acts.* . . . As the Trempes failed to show the amount of the *actual damages* caused by the unfair acts which the judge found to be wilful and knowing, their recovery under . . . § 9, cannot stand" (emphasis supplied).[2]

The judge erroneously included the amounts of $4,500 (the stated policy value of the vehicle) and $450 (for use of a substitute vehicle) as damages which could be the basis of a multiple award. That is not true, however, of interest upon those amounts. It was foreseeable that, if American did not settle promptly, Wallace would need to borrow funds to buy a new vehicle and to hire a temporary substitute. The cost (in the form of interest) of such borrowing was a predictable result of the failure to settle and that amount could be the basis of a multiple award. The interest (based on the doubled policy amounts) properly was included in the judgment. It now must be recomputed on the amount of $4,950 at applicable statutory rates and then doubled, although the amounts due under the policy ($4,950) cannot be doubled.

One further amount proved on this record may be recovered and doubled. The rental of a substitute vehicle after the policy amount of coverage had been exhausted could be found to have been a foreseeable injury resulting from the failure to settle. The amount of that excess loss was disallowed

---

[2] This result seems consistent with the result and language in the following generally related decisions: *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 674-678 (1983); *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 101-102 (1983). See also *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 346-349 (1983).

by the trial judge. Although the policy amount of $450 was a consequence of the theft, and is not to be the basis of a multiple recovery, the excess over $450 paid by Wallace for substitute automobile rental may be determined and doubled under c. 93a, § 9.

Wallace may recover in this action the value of the missing vehicle ($4,500) and the policy amount for rental of a substitute vehicle ($450). The judgment is to be modified to provide for only a single recovery of those amounts. Double recovery may be allowed of interest on these amounts together with $1,284.92 (less the policy coverage of $450) paid by Wallace for substitute automobile rental.[3] The presently allowed attorneys' fees, shall be awarded to Wallace without doubling the amount. Wallace shall be given also costs of this appeal and a reasonable attorney's fee for prosecuting the appeal which is to be fixed in the Superior Court.

The judgment is to be modified as directed in this opinion. As so modified it is affirmed.

*So ordered.*

*J. Warren Heffernan* for the defendant.
*Richard L. Neumeier* for the plaintiff.

---

[3] If American contends that some of the excess amount (over the policy coverage of $450) was paid by Wallace for substitute vehicle rental before a reasonable time for settlement had expired, that circumstance is to be proved by American. Although Wallace claimed no appeal from the modified judgment of September 16, 1985, we think this is a case appropriate for the full correction of the judgment under review (which is in part erroneous) even in the absence of a cross appeal. See *O'Connor* v. *City Manager of Medford,* 7 Mass. App. Ct. 615, 616-618 (1979).