### PROCTOR FLINT & others *vs.* SEWALL FLINT.

An indorsement of a negotiable promissory note to two persons, payable one half to each, accompanied by a delivery thereof to one of them for the benefit of both, vests a valid title in them both, although the other indorsee was absent at the time and did not accept the transfer till afterwards; and they may jointly maintain an action upon it against the payee.

In an action by the indorsee against the maker of a negotiable promissory note, the maker is not entitled to be allowed in set-off for a claim against the payee, accruing after the indorsement, if he was present at a time when the note was delivered by the payee to the indorsee for the purpose of transferring the title therein to the latter, although the actual indorsement thereof was not made till afterwards.

In an action by the indorsee against the maker of a negotiable promissory note, in which one ground of defence is that the indorsee improperly obtained possession of the note, evidence is incompetent to show declarations of the payee, who has since died, that the indorsee had the note and would not give it up, prior to a time when it distinctly appears that the payee in the presence of the maker delivered the note to the indorsee.

No exception lies to the exclusion of the opinion of a witness as to the value of land in controversy, if the only evidence of his being qualified to express an opinion is his own statement that he knew the value and was competent to state it.

Evidence of the assessors' official valuation is incompetent for the purpose of showing the value of land in controversy.

If a note dated April 28, 1836, bears the following indorsements: "Interest paid up to April 28, 1838. Received one year's interest. Received one year's interest, June 13, 1855," no presumption of law arises therefrom that the interest has been paid to the last named date.

CONTRACT upon the following promissory note: " $381. Reading, Apr. 28, 1836. For value received, I promise to pay Sarah Flint or order the sum of three hundred and eighty-one dollars on demand with interest till paid. Sewall Flint. Abram Tapley, witness." The note bore the following indorsements: " North Reading, Nov. 1855. For value received, pay one half of the within note to Sarah Flint, and the other half to Esther Bodge. Sarah Flint, her x mark. Witness, Joseph Cook. Received one year's interest. Interest paid up to April 28, 1838. Received one year's interest. Received one year's interest, June 13, 1855." The action was brought by the two indorsees, with their respective husbands, and the writ was dated March 23, 1861.

At the trial in the superior court, before *Russell*, J., it appeared that the indorsees and maker of the note were all children of the

payee; that the note was held by the payee from its date until her indorsement of it in November 1855 ; that this indorsement was without consideration, and Esther Bodge was not present at the time it was made, and had no knowledge thereof until 1857 · that the defendant had no notice thereof until 1861, ex· cept as hereinafter stated; that the last indorsement of interest was written by the defendant; that on June 15th 1855 the payee applied to him to renew the note by the indorsement of interest thereon, and he thereupon wrote the same, as copied above; that no money was then paid, the payee saying that she had received large sums of money of the defendant; that after the indorsement was made the payee delivered the note to the plaintiff Sarah Flint, saying, in the hearing of the defendant, " This note is for the girls : I have given you (the defendant) enough ; " that the defendant said, " Have you ? " to which she replied, " Yes. You have had enough. This is for the girls ; " that he said, " Yes ; " and that said Sarah has kept the note ever since, and in November 1855 the indorsement of it by the payee was made.

The defendant then offered to prove, by Harriet Beverley, that in 1854 his mother said that the plaintiff Sarah Flint had her papers and would not give them up ; but the evidence was excluded.

The defendant claimed other set-offs, in reply to which the plaintiffs contended that he had received the income of his mother's estate; and in reference to the value of this, James Peabody, a witness for the defendant, testified that he knew the value of real estate and was competent to state the value and income of said estate. The defendant thereupon offered to ask him what such value was, but the evidence was excluded.

The defendant also offered the assessors, with their books, to show the valuation made by the assessors of said estate from 1826 to 1861 ; but the evidence was excluded.

The defendant requested the court to instruct the jury that the action was barred by the statute of limitations; that the indorsement was not absolute, but conditional, and was void for want of consideration; that there was no acceptance by the

indorsees; that no action could be maintained jointly by the plaintiffs; and that the presumption of law was that all interest was paid till June 13th 1855. The judge declined to give any of the rulings asked for, and in reference to the last request stated to the jury that the indorsement was evidence tending to prove payment of interest till June 13th 1855, the weight of which was for them to determine.

The jury returned a verdict for the plaintiffs, for $532.64, and the defendant alleged exceptions.

*W. P. Harding*, for the defendant.

*C. P. Judd*, for the plaintiffs.

DEWEY, J. 1. This action was properly instituted in the names of the present plaintiffs, the indorsement of the entire note being made to the two indorsees, and the claim as respects the maker not being divisible into two separate causes of action. The delivery to one of the indorsees, and a suit instituted and carried on for the benefit of both, with their concurrence, show a sufficient acceptance of the transfer to them. By these acts, they became legal parties to the note, and are entitled to enforce the payment of any sum due thereon, and as to which no defence existed as against the payee at the time of the transfer, although the note was transferred to them as a gift by the payee.

2. The ruling of the court excluding as a set-off, or payment, any indebtedness of the payee to the defendant for support after November 1855, was, upon the facts shown in the case, sufficiently favorable to the defendant.

3. The proposed testimony of Harriet Beverley as to statements of the payee in reference to the possession of the note in 1854 was immaterial, inasmuch as the payee in 1855 was shown to have had the actual possession of it, and at that date to have passed the same by her indorsement, and by the delivery of it to one of the indorsees for the benefit of both.

4. The exceptions to the ruling of the court rejecting the evidence of Peabody as to the value of the house are not sustained His qualifications to give an opinion as to the value of the house were so imperfectly shown as to justify the presiding

judge in rejecting the same. It was not shown that he had owned or occupied any land in the vicinity, or of like character with that of the subject of inquiry, or had lived in the vicinity, or had known even by hearsay of any sales of similar estates. It is true the witness stated that he knew the value of the estate. The party offering him should have gone further, if the facts would have justified him in doing so, and have shown that he was the owner or occupant of a similar estate, and that he had ample means for forming an opinion of the value of this house. It was the duty of the party offering the witness to show these facts, if the presiding judge thought the witness not competent to give an opinion ; and having wholly omitted to do so, no exception lies to the ruling of the court. See *Fowler* v. *County Commissioners, post,* 97 ; *Shattuck* v. *Stoneham Branch Railroad, post,* 117.

5. The proposed evidence as to the amount assessed upon the property, as shown by the assessors' books, was not proper evidence in reference to the actual value of the house.

6. We see no objection to the ruling as to the amount of interest that had been paid upon the note, as indicated by the indorsement. The indorsement was not free from ambiguity as to the precise time of the payment of interest stated to have been made. The most favorable view for the defendant would seem to be that it was to be inferred from the indorsement that the interest had been paid up to the expiration of the year ending April 28, 1855. The words are, " Received one year's interest."

We should infer from the amount of the verdict that the jury allowed the plaintiffs interest only from April 28, 1855. There was certainly no presumption in law that the interest had been paid to the 13th of June 1855, as is contended by the defendant                                        *Exceptions overruled.*